UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SAMUEL UNTERBERG, | |
| Plaintiff, | CIVIL ACTION NO. 3:20-CV-00410 |
| v. | (MANNION, J.) |
| JUSTIN MAGLUILO, et al, | (MEHALCHICK, M.J.) |
| Defendants. | |

**MEMORANDUM**

This matter has been referred to the undersigned for purposes of resolving the discovery dispute raised by the Plaintiff and Defendants Swartz and Magluilo ("PSP Defendants") regarding the production of certain documents. Plaintiff seeks to collect from the PSP Defendants "the entire contents of any investigative file," presumably relating to the Plaintiff. (Doc. 31-1, at 10). PSP Defendants refuse to produce these contents in absence of an agreement to keep the information confidential. (Doc. 38, at 1-2). Additionally, PSP Defendants aver that any communications between the PSP Defendants and the Monroe County District Attorney's office may be withheld pursuant to the work product doctrine. (Doc. 38, at 2). Plaintiff contests these averments. (Doc. 37). Pursuant to the Court's Order of January 15, 2021, the Plaintiff and the PSP Defendants have filed letter briefs on these issues, and they are ripe for disposition. (Doc. 36; Doc. 37; Doc. 38; Doc. 39; Doc. 40).

I. **COMMUNICATIONS BETWEEN THE PSP DEFENDANTS AND THE DISTRICT ATTORNEY'S OFFICE ARE NOT WORK PRODUCT PROTECTED FROM DISCLOSURE.**

PSP Defendants submit that "communications between the PSP Defendants and officials in the Monroe County District Attorney's Office are protected from disclosure by the attorney work-product doctrine." (Doc. 38, at 2). PSP Defendants performed the investigation which led to Plaintiff's criminal prosecution by the Monroe County District Attorney's office, according to PSP Defendants. (Doc. 38, at 2). As such, written communications between PSP Defendants and the Monroe County District Attorney's office "in anticipation of Plaintiff's criminal prosecution" should be deemed attorney work product under Rule 26(b)(3). (Doc. 38, at 2-3). PSP Defendants assert that Plaintiff can obtain this information by questioning the PSP Defendants under oath at a deposition, thus other means are available for obtaining the communications. (Doc. 38, at 3) (citing Fed. R. Civ. P. 26(b)(3)).

Plaintiff avers that the work product doctrine is inapplicable. (Doc. 37, at 3). First, since the work product doctrine only applies to documents created by or for a party or a party's representative, any document created by a member of the Monroe County District Attorney's office is not protected, according to Plaintiff. (Doc. 37, at 3). The documents authored by PSP Defendants and provided to the Monroe County District Attorney's office should also be produced because there is no evidence they were prepared in anticipation of litigation, they were destined to be produced during criminal discovery so were not meant to be confidential, and Plaintiff has a substantial need for them because they are directly relevant to the present litigation. (Doc. 37, at 4).

The work product doctrine protects "documents and tangible things" "prepared in anticipation of litigation" "by or for another party or its representative." Fed. R. Civ. P.

2

26(b)(2). This material can be "ordinary" or "opinion"; opinion work product, which includes "mental impressions, conclusions, opinions, or legal theories," enjoys a higher level of protection than ordinary work product. Fed. R. Civ. P. 26(b)(2). Opinion work product "is accorded an almost absolute protection from discovery" because "any slight factual content that such items may have is generally outweighed by the adversary system's interest in maintaining the privacy of an attorney's though processes and in ensuring that each side relies on its own wit in preparing their respective cases." *Sporck v. Peil*, 759, F.2d 312, 316 (3d Cir. 1985), *cert. denied,* 474 U.S. 903 (1985).

Materials may fall under the work product doctrine if they are "prepared for *any* litigation or trial so long as they were prepared by or for a party to the *subsequent* litigation." *F.T.C. v. Grolier Inc.*, 462 U.S. 19, 25 (1983) (internal citations omitted) (first emphasis in original). When a civil case arises from a prior criminal prosecution, only "documents created in anticipation of the criminal prosecution by a party to the *present case*" are subject to the work product doctrine. *Bolus v. Carnicella*, 2020 WL 6531007, at *6 (M.D. Pa. 2020) (emphasis in original). A *current* party may raise the work product doctrine to protect documents created by them as a party or party representative in *past* litigation. *See Grolier Inc.*, 462 U.S. at 25.

Here, any material created by the Monroe County District Attorney's office is not protected by the work product doctrine because the Monroe County District Attorney is not a party to the current civil litigation. As such, its material cannot be "created 'by' or 'for' a party to the civil litigation within the meaning of Rule 26." *See Grolier*, 462 U.S. at 25; *Bolus,* 2020 WL 6531007, at *6. Material created by the Monroe County District Attorney's office is not subject to the work product doctrine.

Material created by PSP Defendants for purposes of Plaintiff's criminal prosecution is a closer question. In that case, the material is created by a party for purposes of past litigation, so if the PSP Defendants are considered a "party representative" to the past litigation, then that material should be protected.[1] *See Grolier Inc.*, 462 U.S. at 25. In *Donato v. Fitzgibbons*, 172 F.R.D. 69, 71 (S.D.N.Y. 1996), "an incident report, supplemental incident reports, an extensive supplementary report, voluntary witness statements, and an interview" with an officer were not protected by the work product doctrine because "there is no indication that the investigation was conducted by or under the supervision of an attorney" and "it is axiomatic that the reports cannot have been work product when no attorney was involved, no litigation had commenced, and there is no indication in any of the submissions that the reports were obtained solely because of anticipated litigation." *Donato*, 172 F.R.D. at 71. In *Kogut v. County of Nassau*, 2011 WL 13284714, at *3 (E.D.N.Y. 2011), documents created on standard police issue forms suggested that they were "ordinary business documents," thus not subject to the work product doctrine which is not available for documents prepared in the ordinary course of business. *Kogut*, 2011 WL 13284714, at *3. "Under the work product doctrine, police reports are rarely protected." *United States v. Fort*, 472 F.3d 1106, 1116 (9th Cir. 2007).

Here, PSP Defendants object to the production of all communications between the PSP Defendants and the Monroe County District Attorney's office. (Doc. 38, at 2-3). PSP Defendants have not met their burden of establishing that the work product doctrine applies. As in *Donato*, PSP Defendants have provided no indication that such communications were

---

[1] PSP Defendants were not a party to Plaintiff's criminal prosecution.

4

created by or under the supervision of an attorney. *See Donato*, 172 F.R.D. at 71. "Police reports are rarely protected under the work product doctrine," and PSP Defendants have provided no precedent or reasons to indicate they should be protected here.[2] (Doc. 38, at 2-3); *see Fort*, 472 F.3d at 1116. Further, it is possible that the communications at issue were prepared in the ordinary course of business; PSP Defendants have provided no indication that they were not. (Doc. 38, at 2-3). Without a more particularized examination of the communications at issue, granting PSP Defendants' request would most likely include depriving Plaintiff of communications created in the normal course of business which are not protected by the work product doctrine. *See Kogut*, 2011 WL 13284714, at *3.

Furthermore, the underlying purposes of the work product doctrine are not at risk in this case. The first purpose is to preserve a zone of privacy in which a lawyer can prepare and develop legal theories and strategies. *Hickman v. Taylor*, 329 U.S. 495, 511 (1947). Here, communication from PSP Defendants – police officers – to the district attorney do not implicate such a zone of privacy. The second purpose of the doctrine is to prevent attorneys from "piggybacking" off work and research performed by their opponents. *Hickman*, 329 U.S. at 516. Again, that is not a risk in this scenario. Finally, the doctrine aims to prevent undue interference with litigation. *Hickman*, 329 U.S. at 510-11. Such interference is not implicated when the litigation from which the materials arise has ended. *Bolus*, 2020 WL 6531007, at *8.

---

[2] PSP Defendants' reliance on *Billups v. Penn State Milton S. Hershey Med. Ctr.*, 2013 WL 4041161 (M.D. Pa. Aug. 7, 2013) is not persuasive because that case involved communications between the district attorney and an *expert* witness, which PSP Defendants were not. *Billups*, 2013 WL 4041161, at *7 ("The rules and accompanying advisory notes clearly indicate that communications between an attorney and an expert regarding the attorney's conclusions, opinions, and legal theories are privileged work product.").

For the foregoing reasons, PSP Defendants' objection to Plaintiff's request on grounds of the work product doctrine is overruled.

## II. THE CONTENTS OF THE INVESTIGATIVE FILE ARE NOT SUBJECT TO A CONFIDENTIALITY ORDER.

PSP Defendants state that the investigative file Plaintiff requests is confidential and should be subject to a confidentiality order prior to its production. (Doc. 38, at 1). They assert that good cause exists to implement a confidentiality order because internal affairs investigations are kept confidential according to department policy, and to allow this investigative file to become public would "have a chilling effect on reports of potential misconduct within PSP." (Doc. 38, at 2). PSP Defendants emphasize that Plaintiff would not be prejudiced by a confidentiality order – Plaintiff and his counsel would still have access – which would prevent nonpublic documents from entering the public realm. (Doc. 38, at 2). PSP Defendants seek an order that discovery from the internal affairs division be kept confidential and "shall not be used outside the scope of this litigation." (Doc. 38, at 2).

Plaintiff is concerned that PSP Defendants "are not only withholding IAD interviews, reports, and findings but also otherwise discoverable, non-confidential documents simply because they have been reviewed as part of the IAD investigation." (Doc. 37, at 4). Plaintiff cites the personnel files of the PSP Defendants as an example of a document routinely produced but which is being withheld in this instance. (Doc. 37, at 4). Plaintiff proceeds to explain why good cause has not been shown for keeping the investigative file confidential, including the public interest in knowing about "self-dealing, malicious prosecution and excessive force committed by members of the PSP." (Doc. 37, at 7). Plaintiff further claims that the asserted harms are too broad and unsubstantiated to support a good cause showing,

6

according to Plaintiff. (Doc. 37, at 7). Plaintiff asks the Court to order all of the disputed documents produced with no confidentiality agreement. (Doc. 37, at 8).

Rule 26(b)(1) of the Federal Rules of Civil Procedure states, "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). This rule provides a broad scope of discovery. *Johnson v. Miskell*, 2017 WL 3701784, at *3 (M.D. Pa. 2017). "Evidence is relevant if it has any tendency to make a consequential fact in an action more or less probable." *In re Schaefer*, 331 F.R.D. 603, 607 (W.D. Pa. 2019). Information need not be admissible to be discoverable. *Schaefer*, 331 F.R.D. at 607.

So as to protect a party or person "from annoyance, embarrassment, oppression, or undue burden or expense," courts may enter protective orders, such as to keep certain discovery confidential. Fed. R. Civ. P. 26(c). The value of protection to the parties must be balanced against the value of disclosure to the public. *McKenna v. City of Philadelphia*, 2000 WL 1521604, at *1 (E.D. Pa. 2000). Any potential injury from disclosure must be clearly defined and serious. *In re Avandia Mktg. Sales Pracs. & Prods. Liab. Litig.*, 924 F.3d 662, 671 (3d Cir. 2019). A "neither mandatory nor exhaustive" list of factors to be considered when determining whether good cause exists are:

> (1) whether the disclosure will violate any private interests; (2) whether disclosure of the information will cause a party embarrassment; (3) whether the information is being sought for a legitimate purpose or for an improper purpose; (4) whether the sharing of information among the litigants will promote fairness and efficiency; (5) whether confidentiality is being sought over information important to public health and safety; (6) whether a party benefitting from the order of confidentiality is a public entity or official; and (7) whether the case involves issues important to the public.

*Rosenblit v. City of Philadelphia*, 2021 WL 288887, at *5 (E.D. Pa. 2021) (citing *In re Avandia*, 924 F.3d at 671). The movant bears the burden of persuasion on such orders. *Caver v. City of Trenton*, 192 F.R.D. 154, 162 (D.N.J. 2000).

      PSP Defendants state that the file created by the Internal Affairs Department contains sensitive information gathered from witnesses who were assured the information would stay confidential. (Doc. 38, at 2). The file "contains confidential notes and reports prepared by a PSP investigator, transcripts and recordings of confidential witness interviews and any related disciplinary findings." (Doc. 38, at 2). To allow these "materials to now enter the public realm would destroy this confidentiality and have a chilling effect on reports of potential misconduct within PSP." (Doc. 38, at 2).

      As an initial matter, PSP Defendants bear the burden of proving the necessity of a protective order. *See In re Avandia*, 924 F.3d at 671. "[I]njury must be shown with specificity" and PSP Defendants should show a clearly defined and serious injury. *See Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 786 (3d Cir. 1994). The allegations of harm set forth by Defendants are broad and "unsubstantiated by specific examples." *See In re Avandia*, 924 F.3d at 671. The only articulated reasoning – that a chilling effect would result on reports of potential misconduct within PSP – has been struck down in a precedential case by the Eastern District of Pennsylvania:

> I do not accept the general proposition that citizens or fellow police officers will be less likely to give information concerning a police officer's conduct because in a few instances that information may be used in a later lawsuit. As Judge Becker has stated:
>
> First, we do not believe that rare instances of disclosure pursuant to a court order made after application of a balancing test comprising detailed standards such as those enumerated here would deter citizens from revealing information to the police. Neither do we perceive any impact of the disclosure of factual

statements surrounding an investigation of a shooting upon persons who gave them. Police officers are of course willing to cooperate, and we believe that the average citizen is also willing to cooperate with law enforcement officials.

*Crawford v. Dominic*, 469 F.Supp. 260, 264-65 (E.D. Pa. 1979) (quoting *Frankenhauser v. Rizzo*, 59 F.R.D. 339, 344 (E.D. Pa. 1973)).

The court in *Crawford* wrote this explanation after being faced with the argument that "if discovery of these files is granted, assurance of confidence made by citizens and police officers who gave information may be breached." *Crawford*, 469 F.Supp. at 264. Despite the absence of a specific injury, the Court shall proceed to examine the factors which determine good cause for confidentiality. *See Rosenblit*, 2021 WL 288887, at *5

First, there is no evidence that private interests would be violated upon disclosure of the internal affairs investigation, or what the effect of disclosure on individual persons might be. (Doc. 38, at 1-2). Second, there is no evidence that disclosure would cause embarrassment, or that the information is sought for an improper purpose. (Doc. 38, at 1-2). These factors weigh in favor of Plaintiff. *See In re Avandia*, 924 F.3d at 671. The fourth factor, fairness among litigants, is inapplicable as the information will be shared among the parties either way. As to the fifth factor, the health and safety of the public, the PSP Defendants submit that disclosure of this information would chill future investigations, putting public health and safety at risk. (Doc. 38, at 1-2). However, the court in *Crawford* rendered this argument ineffective in stating that citizens and fellow police officers will not be less likely to give information concerning a police officer's conduct when that information, in a few instances, is used in a later lawsuit. *Crawford*, 469 F.Supp. at 264. As the entity from which the order is sought is a public entity, privacy interests are diminished, and the sixth factor also favors the denial of a confidentiality order. *See In re Avandia*, 924 F.3d at 671; *Pansy*, 23 F.3d at 787 ("[P]rivacy interests are

diminished when the party seeking protection is a public person subject to legitimate public scrutiny."). Additionally, the court in *Crawford* clarified that "the public has the strongest interest in maintaining the confidentiality of police files when those files concern an ***ongoing*** criminal investigation." *Crawford*, 469 F.Supp. at 264 (emphasis added). Furthermore, if the identities of certain witnesses must be withheld for the purpose of protecting the safety of the person, those protections may be raised with the court on a case-by-case basis. *See Crawford*, 469 F.Supp. at 265. Finally, the issue of police misconduct is an issue of vast importance to the public, as the police are entrusted to protect our safety. Allegations of abuse of that power involve issues important to the public. *See Schaeffer v. Tracey*, 2017 WL 465913, at *5 (D.N.J. 2017) (noting the "strong public interest in uncovering civil rights violations and enhancing public confidence in the justice system through disclosure.") (quoting *Soto v. City of Concord*, 162 F.R.D. 603, 621 (N.D. Cal. 1995)).

In sum, the Court finds that a balance of the factors to be considered in reviewing a request for the entry of a protective order dictates that the request be denied. As such, Defendants' request for a protective order is DENIED, without prejudice to Defendants' moving for such an order at a later time if there is specific information, the disclosure of which causes a clearly defined injury, for which they seek such an order.[3]

---

[3] If the Defendants seek such an order, it is expected that the parties will meet and confer, per the Federal and Local Rules of Court, to determine if an agreement can be reached on this issue prior to raising it with the Court.

### III. CONCLUSION

For the foregoing reasons, the PSP Defendants are to produce all disputed documents with no protective order implemented at this time. PSP Defendants' objections to production are overruled.

An appropriate Order follows.

Dated: March 1, 2021                              *s/ Karoline Mehalchick*
**KAROLINE MEHALCHICK**
**United States Magistrate Judge**